UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIE ROGERS,

    Plaintiff,

v.

NICHOLAS MATTHEW BYROAD *et al.*,

    Defendants.

CAUSE NO. 3:22-CV-356 DRL

OPINION AND ORDER

On June 28, 2021, Shipshewana Police Department Officer Nicholas Byroad prepared an affidavit for probable cause for Willie Rogers. It was later discovered that the affidavit contained an incorrect assertion. A jury subsequently convicted Mr. Rogers of invasion of privacy. Mr. Rogers first appealed and then sought post-conviction relief in Indiana state courts for misstatements or fabrication of evidence before filing suit here. He sues the Town of Shipshewana,[1] Officer Byroad, LaGrange County, and then-Shipshewana Town Marshal Tom M. Fitch II under 42 U.S.C. § 1983 alleging that they all violated his constitutional rights. He also sues for defamation. Both sides request summary judgment. After the parties filed their motions, Mr. Rogers requested leave to amend his complaint for a third time to add a new claim for malicious prosecution. The court grants the defense's motions for summary judgment and denies Mr. Rogers leave to amend his complaint.

---

[1] Mr. Rogers incorrectly designates the Town of Shipshewana as "City of Shipshewana" in his filings.

BACKGROUND

The court deems all supported factual assertions by the defendants to be true.[2] *See* Fed. R. Civ. P. 56(e)(2). On April 7, 2021, Shipshewana Police Officer Byroad was dispatched for a reported personal protection order violation [100-1 ¶ 12]. The victim, Tiffanie Terry, told Officer Byroad she received an Instagram message instructing her to call a phone number or come to an address [*id.* ¶ 14]. She said she recognized the address as belonging to Mr. Rogers based on prior interactions [*id.* ¶ 15].

About two years prior, in October 2019, Ms. Terry complained about harassment from Mr. Rogers [*id.* ¶ 5-8]. Officer Byroad also investigated that incident [*id.*]. Ms. Terry reported she got unwanted phone calls and messages from Mr. Rogers, a former co-worker [*id.* ¶ 6-7]. She blocked Mr. Rogers after he came to her family's church, told her that he loved her, showed up uninvited outside her home, and messaged her on various social media platforms [*id.*]. After investigating that incident, Officer Byroad turned the case in for review, and the LaGrange County Prosecutor's Office recommended Mr. Rogers be charged with harassment, a misdemeanor that he pleaded guilty to in February 2020 [*id.* ¶ 8-10].

Following the 2019 harassment, Ms. Terry obtained a protective order against Mr. Rogers [*id.* ¶ 16; 100-2]. The order prohibited Mr. Rogers from harassing, contacting, or directly or indirectly communicating with her [100-1 ¶ 17]. Officer Byroad confirmed the order was still in effect on April 7, 2021 [*id.* ¶ 16-18].

---

[2] In his combined response to the defendants' motions for summary judgment, Mr. Rogers doesn't respond to the statements of material facts. Accordingly, the court may consider the facts alleged in the motions "undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2); N.D. Ind. L.R. 56-1(b)(2). When a plaintiff is proceeding *pro se*, his filings are entitled to liberal construction. However, even as a *pro se* litigant, a plaintiff is required to follow the Federal Rules of Civil Procedure and a district court's local rules; he is not excused from complying with his responsibilities. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

After utilizing police software to confirm the phone number and address provided in the Instagram message belonged to Mr. Rogers [*id.* ¶ 19-20; 23-24], Officer Byroad called the phone number [*id.* ¶ 26]. No one picked up, but later that day the department received a phone call from the number [*id.* ¶ 28-29]. The male caller confirmed to Officer Byroad he was Willie Rogers but denied contacting Ms. Terry on Instagram and couldn't explain who sent Ms. Terry a message asking her to call the phone number Mr. Rogers now called from [*id.* ¶ 30-32; 35-36]. Officer Byroad told Mr. Rogers he couldn't contact Ms. Terry because of the protective order [*id.* ¶ 33]. Officer Byroad then prepared a police report and forwarded it to the prosecutor for review [*id.* ¶ 39].

On June 24, 2021 and June 27, 2021, Ms. Terry received a message and video call respectively from a Facebook profile appearing to belong to Mr. Rogers [*id.* ¶ 49]. Ms. Terry recognized Mr. Rogers from the account's profile picture and name [*id.* ¶ 50]. Also, on June 25, 2021, Ms. Terry reported Mr. Rogers called her [*id.* ¶ 40-41]. The phone number she received the call from matched the one Ms. Terry got in the Instagram message and that Officer Byroad used to contact Mr. Rogers [*id.* ¶ 42-44].

After unsuccessful attempts at contacting Mr. Rogers, Officer Byroad prepared an affidavit for probable cause for invasion of privacy and harassment against Mr. Rogers [*id.* ¶ 52-53; 56-57]. As relevant to Mr. Rogers' claims here, Officer Byroad stated in the affidavit that the phone number first provided to Ms. Terry in the April 2021 Instagram message and utilized throughout the course of the investigation was the same as the phone number associated with the 2019 investigation [*id.* ¶ 62]. This was an inadvertent mistake on his part—he intended to say the address for Mr. Rogers from the 2019 investigation matched that provided to Ms. Terry in

3

the April 2021 Instagram message [*id.* ¶ 63]. Officer Byroad submitted the probable cause affidavit in good faith and without any false statements or statements made with reckless disregard for the truth [*id.* ¶ 64]. Authorities charged and arrested Mr. Rogers for harassment and invasion of privacy [*id.* ¶ 65-66]. The prosecutor's office later dropped the harassment charge [*id.* ¶ 67].

Officer Byroad was deposed in connection with Mr. Rogers' criminal case and testified both at a suppression hearing and Mr. Rogers' jury trial [*id.* ¶ 69-77]. On each of these occasions, Officer Byroad was questioned about the phone number [*id.*]. At the suppression hearing, Officer Byroad testified to the sources of information that led him to believe Mr. Rogers had violated the protective order, which included the conversation he had with Mr. Rogers via the phone number, the June 25, 2021 phone call that Ms. Terry received from the phone number, and the June 24, 2021 message and June 27, 2021 video call from Mr. Rogers via Facebook [*id.* ¶ 73-74]. The judge denied the motion to suppress and deferred to his prior determination of probable cause [*id.* ¶ 75]. The same sources of evidence were reiterated by Officer Byroad when he testified at the trial [*id.* ¶ 76-77]. A jury convicted Mr. Rogers of invasion of privacy [101 ¶ 78, 100-6].

Mr. Rogers filed suit here [1]. At the time of filing, his criminal trial had not yet occurred [*see* 57]. Accordingly, the court entered a stay that was then lifted following the conclusion of the criminal proceedings, including his unsuccessful appeal [66]. *See Younger v. Harris*, 401 U.S 37, 41 (1971).

In the state courts, Mr. Rogers appealed his conviction, claiming misstatements or fabrications of evidence in the affidavit that led to his arrest [100-7 at 5-6 ¶ 7]. The Indiana Court of Appeals affirmed his conviction [*id.* 7 ¶ 9]. It noted that even removing the mistake from the

4

affidavit, the remaining evidence in the affidavit still was sufficient for a finding of probable cause [*id.* 6]. Indiana courts also denied his multiple attempts at seeking post-conviction relief [100-9, 100-10, 100-11, 100-12, 100-13]. Mr. Rogers filed for summary judgment as to all claims here [70]. The defendants then also filed motions for summary judgment as to all claims [95, 99].

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll. v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020).

Conclusory assertions without any factual support are also insufficient to create a genuine issue of fact. *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 894 (7th Cir. 2003); *Hadley v. Cnty. of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

With crossmotions, each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *Tegtmeier v. Midwest Operating Eng'rs Pension Tr. Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (citation omitted). In performing its review,

the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

Mr. Rogers claims violations of his rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, he must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). He may bring a § 1983 claim only against an individual "personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002).

A.   *Count 6—Defamation Claim.*

Mr. Rogers brings a supplemental state claim for defamation *per se* against Officer Byroad, LaGrange County, and the Town of Shipshewana. He alleges only generally that Officer Byroad made false and defamatory comments about him, with the town and county liable as principals [40 ¶ 82-91]. All defendants request summary judgment as to this count because Mr. Rogers failed to comply with the notice requirements of the Indiana Tort Claims Act (ITCA).

Under the ITCA, a tort claim against a political subdivision or an employee of a political subdivision is barred unless notice is filed with the governing body of the subdivision and the

subdivision's risk management commission within 180 days after the alleged loss occurs. Ind. Code § 34-13-3-8(a); *Poole v. Clase*, 476 N.E.2d 828, 831 (Ind. 1985) ("whether a plaintiff elects to sue only the entity, only the employee, or both the entity and the employee, there is no difference to the employing entity since it still must provide the defense."). The notice must be in writing and describe in a short and plain statement the facts on which the claim is based. Ind. Code §§ 34-13-3-10, 34-13-3-12. "Political subdivisions" include a county, township, town, and city. Ind. Code § 34-6-2-110. Generally, the failure to comply with the notice requirements will subject a claim to summary judgment. *Budden v. Bd. of Sch. Comm'rs*, 680 N.E.2d 543, 548 (Ind. Ct. App. 1988). Defamation is a tort action. *See Long v. Durnill*, 697 N.E.2d 100, 106 (Ind. Ct. App. 1998).

Here, there is no genuine triable issue that Mr. Rogers didn't provide the defendants with proper notice of his tort claim. Although Mr. Rogers attaches to his complaint a letter he describes as an "Indiana Tort Claim Act letter of denial" [40 ¶ 84], this is merely a letter from the Indiana Attorney General's office related to an unspecified loss Mr. Rogers attributes to the Shipshewana Police Department [*id.* 17]. The letter doesn't reflect compliance with any of the ITCA notice requirements here.

Mr. Rogers concedes in an interrogatory answer that "[n]o tort claim was sent by plaintiff" and accordingly there was no notice [80 at 7]. And Officer Byroad, the Town of Shipshewana, and LaGrange County raised the failure to provide proper notice first as a defense in their answers to the amended complaint and again in their briefs for summary judgment. Mr. Rogers didn't address his procedural shortcoming in responding to the defense's summary judgment motions, so he has failed to carry his burden of proving compliance. *See Alexander v. City of S. Bend*, 256 F. Supp.2d 865, 875 (N.D. Ind. 2003) (once a defendant raises failure to comply with the ITCA's

7

notice requirements, the burden shifts to the plaintiff to prove compliance). Accordingly, the court grants summary judgment on count 6.

  B. *Counts 1, 2, and 4.*

Mr. Rogers brings three claims related to his state criminal conviction and the statement in the probable cause affidavit about the phone number. Count 1 alleges the Town, County, Mr. Fitch, and Officer Byroad deprived him of his procedural due process right to fairness in a criminal proceeding [40 ¶ 51-53]. Count 2 alleges the Town, County, Mr. Fitch, and Officer Byroad conspired to intentionally bring about his wrongful arrest, prosecution, and confinement, despite knowing that the evidence supporting the charges was unlawfully obtained [*id.* ¶ 54-58]. Count 4 against Officer Byroad alleges the incorrect assertion in the probable cause affidavit constituted fabrication of evidence [*id.* ¶ 65-72].

In their motions for summary judgment, the defendants argue that these claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). They say, because Mr. Rogers is attacking his arrest, charges and prosecution, confinement, and conviction in his state criminal case, his claims here constitute an impermissible collateral attack. In response, Mr. Rogers argues that *Heck* doesn't apply because his claims focus on the fabrication of evidence in the probable cause affidavit, which occurred before the trial and conviction. Accordingly, says Mr. Rogers, he seeks redress merely for pretrial constitutional violations, not the outcome of his criminal case.

*Heck* holds that a § 1983 plaintiff seeking damages on a theory that implies his conviction's invalidity must first show that the conviction has been set aside. *Heck*, 512 U.S. at 486-87 ("to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983

8

plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."). Further, "[a plaintiff] cannot seek to accomplish by a section 1983 declaratory judgment what he must accomplish solely through a writ of habeas corpus." *Cochran v. Nozick*, 2020 U.S. Dist. LEXIS 167088, 2 (N.D. Ind. Sept. 14, 2020) (citation and quotation omitted). The *Heck* bar applies not only to a challenge to an extant criminal conviction or sentence, but also to a claim that "necessarily threatens to impugn … the prosecution itself," such as fabrication of evidence. *McDonough v. Smith*, 588 U.S. 109, 122 (2019); *see also Savory v. Cannon*, 947 F.3d 409, 417 (7th Cir. 2020) ("There is no logical way to reconcile [a fabrication of evidence] claim[] with a valid conviction. Therefore, *Heck* supplies the rule for accrual of the claim.")

Mr. Rogers seemingly argues in his response brief that his conviction was based on independent evidence and proving the fabrication wouldn't imply that his conviction is invalid such that *Heck* wouldn't apply. Though it is true that a plaintiff can avoid the *Heck* bar if his claim doesn't necessarily refute the factual underpinnings for his conviction, *see Heck*, 512 U.S. at 487 n.7, Mr. Rogers's version of the facts necessarily implies the invalidity of his conviction and cannot be reconciled with his argument.

He asserts that his arrest and subsequent prosecution and conviction were improper because the events stemmed from fabricated evidence [40 ¶ 38-47]. So, a finding that the police lacked the proper probable cause to arrest him would necessarily imply the invalidity of his conviction that was based on evidence and testimony contained in the probable cause affidavit. *See, e.g., Johnston v. Devries*, 2022 U.S. App. LEXIS 4275, 6 (7th Cir. Feb. 16, 2022) ("Here, the

9

facts alleged by Johnston—that the police officers lacked probable cause to arrest him because the 911 call was fabricated, and that the witness at the bank gave false testimony—call into question the validity of his underlying criminal conviction."); *Rollins v. Willett*, 770 F.3d 575, 576 (7th Cir. 2014) ("So suppose a defendant convicted of possessing illegal drugs found on his person sued the officer who had found the drugs, alleging that the officer planted them. If he won the suit, it would imply the invalidity of his drug conviction. The suit would therefore be barred by the rule of *Heck v. Humphrey*.").

And it is undisputed that Mr. Rogers' conviction for invasion of privacy remains in place. In the underlying criminal case, Mr. Rogers attempted a direct appeal, filed motions to suppress and dismiss based on the probable cause affidavit, sought post-conviction relief and an appeal from that denial, filed a motion for writ of error *coram nobus* and a subsequent appeal of the court's denial, and finally filed a unsuccessful successive petition for post-conviction relief [100-1 at 9 ¶ 75, 100-5, 100-7 at 5-6 ¶ 7, 100-9, 100-10, 100-11, 100-12, 100-13]. Accordingly, the claims in counts 1, 2, and 4 are barred by *Heck*.

Even putting *Heck* aside, Mr. Rogers' claims fail. Using false evidence to convict a person at trial violates his right to a fair trial under the due process clause of the Fourteenth Amendment. *Patrick v. City of Chi.*, 974 F.3d 824, 834-35 (7th Cir. 2020). To succeed, a plaintiff must show (1) the defendant knowingly fabricated evidence against the plaintiff, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) the plaintiff was damaged as a result. *Id.* at 835. The "essence" of a fabricated evidence due process claim is that "the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Id.*; *Whitlock v. Brueggemann*, 682 F.3d 567,

580 (7th Cir. 2012) ("a police officer who manufactures false evidence against a criminal defendant violates the due process clause if the evidence is later used to deprive the defendant of [his] liberty in some way").

Mr. Rogers alleges that Officer Byroad fabricated the statement in his probable cause affidavit "maliciously and willfully" with reckless disregard for its truth or falsity and the fabrication led to his injuries [40 ¶ 36]. But, as the defendants argue, the undisputed record shows that Officer Byroad didn't "knowingly" fabricate any evidence. *See Patrick*, 974 F.3d at 834-45. In an affidavit, Officer Byroad testified the misstatement "was an inadvertent mistake" and he "submitted the probable cause affidavit in good faith," not with any false statements [100-1 ¶ 63-64]. *Patrick*, 974 F.3d at 835; *cf. Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (holding that a search warrant can be invalidated if it lacks probable cause due to a false statement made knowingly and intentionally or with reckless disregard for the truth).

Further, the misstatement wasn't "material." *See Patrick*, 974 F.3d at 835; *United States v. Johnston*, 876 F.2d 589, 592 (7th Cir. 1989) (holding that a warrant procured in part by tainted evidence is not necessarily invalid because the untainted information, considered by itself, may establish probable cause for the warrant). Mr. Rogers offers no evidence or argument that the arrest warrant wouldn't have been issued if Officer Byroad's affidavit lacked the information that Mr. Rogers alleges he fabricated. *See, e.g., United States v. Markling*, 7 F.3d 1309, 1316 (7th Cir. 1993) ("a search warrant procured in part on the basis of illegally obtained information will still support a search if the untainted information supporting the warrant, considered alone, is sufficient to establish probable cause"). Other bases offered in the probable cause affidavit included that Officer Byroad called the phone number provided to Ms. Terry and received a call

11

back from that number from an individual identifying himself as Mr. Rogers [100-1 ¶ 26-30]; Ms. Terry received additional phone calls and messages from the phone number and a Facebook account appearing to belong to Mr. Rogers [*id.* 41-48]; and a valid no-contact order prohibited Mr. Rogers from contacting Ms. Terry [100-2, 100-1 ¶ 17].

The state courts concurred too.[3] In its order denying Mr. Rogers' motion to dismiss and suppress, the trial court said any error in Officer Byroad's affidavit was "minor" and not intentionally made [100-5 at 1]. And, in denying his appeal of his conviction, the Indiana Court of Appeals noted even if the misstatement was removed from the affidavit, "it seem[ed] highly likely that the affidavit still contained other evidence sufficient for a finding of probable cause" [100-7 ¶ 7 n.4].

Finally, Mr. Rogers claims a conspiracy among the Town, County, Mr. Fitch, and Officer Byroad. A claim for § 1983 liability via a conspiracy theory requires a plaintiff to show (1) a private actor and state official reached an understanding to deprive the plaintiff of his constitutional rights and (2) those individuals were willful participants in joint activity with the state or its agents. *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012) (citation and quotation omitted). "There must be evidence of a concerted effort between a state actor and [a private] individual." *Whitlock*, 682 F.3d at 577. Direct proof of such an agreement is rarely available since conspiracies are by their very nature secretive. *See Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015). Accordingly, existence of a conspiracy may be inferred through the combination of common sense and circumstantial evidence. *Id.* A conspiracy claim cannot survive summary judgment based on vague conclusory

---

[3] The court may take judicial notice of proceedings in other courts, both federal and state, if the proceedings have a direct relation to matters at issue. *Green v. Warden, U.S. Penitentiary*, 699 F.3d 364, 369 (7th Cir. 1983).

allegations that include no overt acts reasonably related to promoting the conspiracy. *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).

Mr. Rogers makes blanket allegations but cannot satisfy either element. He hasn't provided even a scintilla of evidence, even circumstantial, of any agreement among any of the defendants. Notably, LaGrange County, as a separate governmental entity, has no control over the Shipshewana Police Department or its officers [95-1 ¶ 4-6, 95-2 ¶ 5-8, 100-1 ¶ 3-4, 100-8 ¶ 5-6]. Further, Mr. Fitch testified he had no personal involvement with Mr. Rogers or his alleged deprivation of rights, nor was Officer Byroad acting at his direction on the day in question [100-8 ¶ 9-12]. Mr. Rogers hasn't pointed to anything that could support the inference of an agreement to deprive him of his constitutional rights. He also cannot show any deprivation of rights because there was probable cause for the arrest.

Accordingly, the court grants summary judgment to the defense on counts 1, 2, and 4.

C. *Counts 3 and 5.*

Mr. Rogers pursues counts 3 and 5 against the Town, County, and Mr. Fitch. Count 3 alleges the Town, County, and Mr. Fitch failed to supervise or train employees, leading to a deprivation of Mr. Rogers' constitutional rights [40 ¶ 59-64]. Count 5 is a *Monell* claim against the Town and County, alleging Officer Byroad's conduct was the result of and fairly represented official policies [*id.* ¶ 73-81].

Under 42 U.S.C. § 1983, a person may sue anyone who, while acting under color of state law, causes him to be deprived of any of his constitutional rights. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality can only be held liable under § 1983 if "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

13

represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The law recognizes three paths to municipal liability for the deprivation of a person's constitutional rights: (1) an express policy, (2) a widespread custom, or (3) a deliberate act of a decisionmaker with final policymaking authority. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

To succeed on a § 1983 claim in this vein, a plaintiff must establish that (1) he suffered a deprivation of a federal right (2) as a result of an express policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority for the county that (3) was the proximate cause of his injury. *See King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014). "The 'official policy' requirement for liability under § 1983 is to 'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Est. of Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis omitted). "To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience, of course." *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016).

Mr. Rogers brings his *Monell* claim based on the Town and County's customs and practices, which he says include "little to no intervention or action to cause an end to the described unconstitutional abusive conduct by its employees" [40 ¶ 79]. He also says Officer Byroad's actions "fairly represent official policy of the [Town] of Shipshewana and County of Lagrange" [*id.* ¶ 80]. The Town argues Mr. Rogers fails to point to any policy or practice that caused a constitutional deprivation. The County says it has no control over the Shipshewana

14

Police Department, a separate governmental entity, or its officers, so no "official act" of it was involved. Mr. Rogers didn't rebut these arguments. He hasn't pointed to anything in the record that even suggests an officially policy, custom, or practice was violated; his allegations focus solely on his case. *See Daniel*, 833 F.3d at 734-35. Accordingly, no reasonable jury could conclude Town or County policies caused Mr. Rogers injury.

Mr. Rogers also alleges Mr. Fitch, the County, and the Town failed to supervise or train its employees, and this was the proximate cause of his injuries [40 ¶ 63]. "Failure to supervise claims… are a 'tenuous' form of *Monell* liability." *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019) (quoting *Connick*, 563 U.S. at 61). Plaintiffs must meet "high requirements" and show "deliberate indifference." *Id.*

A plaintiff may take an "alternative path to *Monell* liability" by alleging the need for more or different training is "so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of institutional culpability, even in the absence of a similar prior constitutional violation." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 380 (7th Cir. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). This is known as a failure-to-train theory of liability. *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). Though the law does not "absolutely foreclose the possibility that a plaintiff might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations," a plaintiff relying on a failure-to-train theory must still eventually "provide enough evidence of custom and practice to permit an inference that the [municipal entity] has chosen an impermissible way of operating." *Calhoun*, 408 F.3d at 381. Again, Mr. Rogers hasn't pointed to a custom or policy. Further, nothing in the

15

record suggests Officer Byroad was insufficiently trained; no reasonable jury could reach such a conclusion. The court grants summary judgment as to Counts 3 and 5.

D.      *Motion to Amend the Complaint.*

Finally, Mr. Rogers moved to amend his complaint for a third time on October 28, 2024 [108]. All defendants oppose [109, 110]. Mr. Rogers wishes to plead a malicious prosecution claim, presumably against all defendants, that "was inadvertently omitted" from his second amended complaint.

Leave to amend is to be "freely given when justice so requires." *Liu v. T&H Mach. Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). But "that does not mean it must always be given." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). "[C]ourts have broad discretion to deny leave to amend [when] there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or [when] the amendment would be futile." *Id.* (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)).

The last day for Mr. Rogers to amend his complaint under the scheduling order was April 12, 2024. Mr. Rogers thus must first establish good cause for amending his complaint before the court turns to the contents of any proposed amended complaint. *See* Fed. R. Civ. P. 16(b)(4); *Alioto v. Town of Lisbon*, 651 F.3d 715, 719-20 (7th Cir. 2011). The "primary consideration for district courts is the diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720 (citing *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005)).

Mr. Rogers doesn't offer good cause. He concedes the criminal charge underpinning the malicious prosecution claim he now wishes to plead was dismissed before he amended his

complaint for a second time. *Cf. Luckett v. Conlan*, 561 F. Supp.2d 970, 976-77 (N.D. Ill. 2008) (good cause to amend exists when it is reasonable that new claims are only recognized after filing of complaint). He offers no sensible reason why he didn't plead this claim earlier, apart from inadvertence on his part, and mere inadvertence isn't good cause.

In any event, the claim Mr. Rogers wants to now plead would be futile. *See Hukic*, 588 F.3d at 432. Under Indiana law, "[t]he elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005). As discussed, Mr. Rogers' criminal case hasn't been resolved in his favor. Pleading a malicious prosecution claim would be fruitless. The court won't grant Mr. Rogers leave to amend his complaint for a third time.

## CONCLUSION

Accordingly, the court GRANTS the summary judgment motions of LaGrange County [95] and Officer Byroad, Mr. Fitch, and the Town of Shipshewana [99] on all counts in the second amended complaint and DENIES Mr. Rogers' motion for summary judgment [70]. The court DENIES Mr. Rogers' motion to amend his complaint for a third time [108]. This order terminates the case.

SO ORDERED.

January 24, 2025                            *s/ Damon R. Leichty*
                                                                 Judge, United States District Court